## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

VERA BOWERS, Individually and For
Others Similarly Situated

v.

MI OPCO HOLDCO LLC d/b/a THE
ORCHARDS MICHIGAN

**Case No. _____**

Jury Trial Demanded

FLSA Collective Action

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Vera Bowers (Bowers) brings this collective action to recover unpaid wages and other damages from MI OpCo HoldCo LLC d/b/a The Orchards Michigan (Orchards).

2.     Orchards employed Bowers as one of its Straight Time Workers (defined below).

3.     Bowers and the other Straight Time Workers are paid by the hour.

4.     Bowers and the other Straight Time Workers regularly work more than 40 hours a workweek for Orchards.

5.     But Bowers and the other Straight Time Workers are not paid required overtime wages when they work in excess of 40 hours a workweek for Orchards.

6.     Instead, Orchards misclassifies Bowers and the other Straight Time Workers as independent contractors.

7.      While working for Orchards, Bowers and the other Straight Time Workers are paid the same hourly rate, "straight time," for all hours worked each workday and never paid 1.5 times their regular rates of pay for hours worked in excess of 40 a workweek (straight time for overtime).

8.      Orchards applies its straight time for overtime pay scheme to Bowers and the other Straight Time Workers regardless of any allegedly individualized differences.

9.      Orchards' straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA) by depriving Bowers and the other Straight Time Workers of the "time and a half" overtime premium they are owed for hours worked in excess of 40 a workweek.

### JURISDICTION & VENUE

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11.     This Court has general personal jurisdiction over Orchards because it is a Michigan limited liability company.

12.     Venue is proper because Orchards maintains its principal place of business in Harper Woods, Michigan, which is in this District and Division. *See* 28 U.S.C. § 1391(b)(1).

### PARTIES

13.     Bowers worked for Orchards as a Certified Nursing Assistant (CNA) at

its Roseville and Warren, Michigan facilities.

14.     Orchards misclassified Bowers as an independent contractor to avoid paying her overtime wages.

15.     Instead, under Orchards' straight time for overtime pay scheme, Bowers was paid the same hourly rate for all hours worked each workday and was not paid "time and a half" for hours worked in excess of 40 a workweek.

16.     Bowers' written consent is attached as **Exhibit 1**.

17.     Bowers brings this collective action on behalf of herself and all other similarly situated employees who worked for Orchards, who were paid under its straight time for overtime pay scheme.

18.     The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Orchards employees, who were paid straight time for all hours worked, including hours worked in excess of 40 a workweek, at any time during the past 3 years through final resolution of this action (the "Straight Time Workers").**

19.     Orchards is a domestic limited liability company with its principal place of business in Harpers Wood, Michigan.

20.     Orchards can be served through its registered agent: **File Right RA Services LLC, 4750 Venture Dr., Suite 400, Ann Arbor, Michigan 48108**.

### FLSA COVERAGE

21.     At all relevant times, Orchards was an "employer" within the meaning of

the FLSA. 29 U.S.C. § 203(d).

22.     At all relevant times, Orchards was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

23.     At all relevant times, Orchards was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cell phones, computers, medical supplies, and personal protective equipment, that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

24.     At all relevant times, Orchards has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

25.     At all relevant times, Bowers and the other Straight Time Workers were Orchards' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

26.     At all relevant times, the Straight Time Workers were engaged in commerce or in the production of goods for commerce.

<h3 style="text-align:center">FACTS</h3>

27.     Orchards owns and operates 11 facilities in Michigan that provide services including assisted living care, skilled nursing care, long term care, memory care, and post-surgical recovery services.[1]

---

[1]  https://theorchardsmi.com/our-communities-locations and https://theorchardsmi.com/our-services (last visited February 17, 2025).

28. To meet its business objectives, Orchards hires employees, like Bowers and the other Straight Time Workers.

29. Orchards advertises open jobs and invites applications for employment at all of its 11 facilities, including its Roseville and Warren facilities, on its website.[2]

30. But Orchards misclassifies Bowers and the other Straight Time Workers as independent contractors.

31. Bowers and the other Straight Time Workers are not paid premium overtime wages for the hours they work in excess of 40 a workweek, while working for Orchards.

32. Orchards does not hire Bowers and the other Straight Time Workers on a project-by-project basis.

33. Rather, Orchards hires and treats Bowers and the other Straight Time Workers just like other regular employees.

34. Indeed, Orchards employs numerous other CNAs and similar patient care workers, whom it properly classifies and treats as employees, who perform the same or similar functions as Bowers and the other Straight Time Workers.

35. Despite misclassifying Bowers and the other Straight Time Workers as independent contractors, Orchards controls and directs all meaningful aspects of their employment.

---

[2] https://careers.hireology.com/advantagelivingcenters (last visited February 17, 2025).

36.     Orchards controls Bowers' and the other Straight Time Workers' rate and method of pay.

37.     Orchards controls Bowers' and the other Straight Time Workers' schedules and assignments.

38.     Orchards controls Bowers' and the other Straight Time Workers' work.

39.     Bowers and the other Straight Time Workers work on Orchards' premises.

40.     Orchards requires Bowers and the other Straight Time Workers to follow its policies, procedures, and protocols.

41.     Bowers' and the other Straight Time Workers' work must strictly adhere to the quality and safety standards put in place by Orchards.

42.     Bowers and the other Straight Time Workers take direction from and are supervised by Orchards personnel.

43.     Bowers and the other Straight Time Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

44.     Indeed, the daily and weekly activities of Bowers and the other Straight Time Workers are largely governed by standardized plans, procedures, and checklists created and implemented by Orchards.

45.     Virtually every job function is predetermined by Orchards, including the tools and equipment used.

46.     These tools and equipment utilized by Bowers and the other Straight Time Workers are provided by Orchards.

47.     Orchards likewise dictates Bowers' and the other Straight Time Workers' schedule of work and related work duties.

48.     Without the job Bowers and the other Straight Time Workers perform, Orchards would not be able to complete its core business objective of providing assisted living care, skilled nursing care, long term care, memory care, post-surgical recovery services, among other services, to its residents.

49.     The work Bowers and the other Straight Time Workers perform is therefore an essential and integral part of Orchards' core business of providing these services to its residents.

50.     Bowers and the other Straight Time Workers rely on Orchards for work and compensation.

51.     Bowers and the other Straight Time Workers have little or no opportunity for profit or loss.

52.     Indeed, Bowers' and the other Straight Time Workers' income is limited to the hourly wages (that do not include overtime) they are paid for hours worked each day and week, while working for Orchards.

53.     Bowers and the other Straight Time Workers cannot subcontract out the work they are assigned by Orchards.

54.     Bowers and the other Straight Time Workers do not substantially invest

in the tools required to complete their assignments from Orchards.

55.    Rather, Orchards incurs the large-scale business and operating expenses like payroll, marketing, equipment, tools, facilities, and materials.

56.    Orchards maintains control, oversight, and direction of Bowers and the other Straight Time Workers, including, but not limited to, hiring, firing, disciplining, and other employment practices.

57.    In sum, as a matter of economic reality, Bowers and the other Straight Time Workers are Orchards' employees.

58.    Bowers and the other Straight Time Workers are paid by the hour, while working for Orchards.

59.    Bowers and the other Straight Time Workers regularly work more than 40 hours a workweek for Orchards.

60.    But Bowers and the other Straight Time Workers are not paid premium overtime wages, while working for Orchards.

61.    Instead, Bowers and the other Straight Time Workers are paid the same hourly rate for all hours worked each workday they work for Orchards.

62.    When Bowers and the other Straight Time Workers work in excess of 40 hours in a workweek for Orchards, they are not paid "time and a half" for these hours in excess of 40.

63.    While exact job titles and job duties may differ, Orchards subjects these employees to the same or similar straight time for overtime pay scheme for similar work.

64.     For example, Bowers worked for Orchards as a CNA in its Roseville and Warren facilities from approximately January 2021 through July 2022.

65.     As a CNA, Bowers' primary duties included monitoring residents and providing for residents' activities of daily living by assisting them with meals, feeding residents as necessary, ambulating, turning, and positioning residents, providing fresh water and nourishment between meals, and assisting Orchards nurses and other patient care employees as assigned.

66.     Orchards misclassified Bowers as an independent contractor to avoid paying her overtime wages.

67.     The shifts she worked for Orchards were scheduled through an online "app" Orchards utilized to secure employees, called CareRev.

68.     She was paid a single hourly rate (straight time) for each hour of every shift she worked for Orchards.

69.     Bowers was never paid "time and a half" overtime wages when she worked in excess of 40 hours in a workweek for Orchards.

70.     Instead, she was paid straight time for overtime, while working for Orchards.

71.     Bowers was Orchards' hourly employee.

72.     Orchards approved Bowers' hours worked.

73.     Orchards' records reflect the hours Bowers worked each week.

74.     Bowers regularly worked more than 40 hours a workweek, while employed

by Orchards.

75.     Indeed, she typically worked approximately 12 hours a day for 4 to 5 days a week (48 to 60 hours a workweek).

76.     Despite knowing Bowers regularly worked more than 40 hours a workweek for Orchards, she was not paid overtime wages for these hours.

77.     Instead, Orchards paid her under its straight time for overtime pay scheme.

78.     Under Orchards' straight time for overtime pay scheme, Bowers did not receive the required "time and a half" overtime premium when she worked over 40 hours a workweek.

79.     The other Straight Time Workers are paid according to the same straight time for overtime pay scheme that Orchards imposed on Bowers.

80.     Like Bowers, the other Straight Time Workers are paid by the hour.

81.     And Orchards approves the other Straight Time Workers' hours.

82.     Thus, just as Orchards maintains records of the hours Bowers worked, it also maintains records of the other Straight Time Workers' hours.

83.     Orchards' records show the Straight Time Workers, like Bowers, regularly work more than 40 hours a workweek.

84.     Every Straight Time Worker worked more than 40 hours in at least one workweek during the relevant period.

85.     Despite knowing the other Straight Time Workers regularly work

overtime, they are not paid premium overtime wages, while working for Orchards.

86.     Bowers and the other Straight Time Workers were never paid on a "salary basis," while working for Orchards.

87.     Because Bowers and the other Straight Time Workers were never paid on a "salary basis," while working for Orchards, they are all non-exempt employees entitled to overtime wages.

88.     But Bowers and the other Straight Time Workers are not paid time and a half overtime wages when they work more than 40 hours in a workweek.

89.     Instead, they are paid under Orchards' uniform, illegal straight time for overtime pay scheme, in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

90.     Bowers brings her claims as a collective action on behalf of herself and all others similarly situated under section 216(b) of the FLSA.

91.     The Straight Time Workers were victimized by Orchards' straight time for overtime pay scheme.

92.     Other Straight Time Workers worked with Bowers and indicated they were paid in the same manner, performed similar work, and were subject to Orchards' same straight time for overtime pay scheme.

93.     Based on her experiences with Orchards, Bowers is aware Orchards' straight time for overtime pay scheme was imposed on other Straight Time Workers.

94.     The Straight Time Workers are similarly situated in the most relevant

respects.

95. The Straight Time Workers were all subject to Orchards' straight time for overtime pay scheme that deprived them of required overtime wages for all hours worked in excess of 40 a workweek.

96. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purpose of determining their entitlement to overtime wages.

97. Specific job titles or precise job locations of the Straight Time Workers do not prevent collective treatment.

98. Rather, the Straight Time Workers are held together by Orchards' straight time for overtime pay scheme that systematically deprived them of overtime wages for all hours worked in excess of 40 a workweek.

99. The failure to pay overtime wages for all overtime hours worked by the Straight Time Workers, as required by the FLSA, results from generally applicable, systematic policies, and practices imposed by Orchards, which are not dependent on the personal circumstances of the Straight Time Workers.

100. The Straight Time Workers are similarly denied overtime wages when they work more than 40 hours in a week.

101. Bowers' experiences are therefore typical of the experiences of the other Straight Time Workers.

102. Bowers has no interest contrary to, or in conflict with, the other Straight

Time Workers.

103.    Like each Straight Time Worker, Bowers has an interest in obtaining the unpaid wages owed to them under the FLSA.

104.    Absent this collective action, many Straight Time Workers likely will not obtain redress for their injuries, and Orchards will reap the unjust benefits of violating federal law.

105.    Bowers and her counsel will fairly and adequately protect the interests of the other Straight Time Workers.

106.    Bowers retained counsel with significant experience in complex collective action litigation.

107.    Further, even if some of the Straight Time Workers could afford individual litigation against Orchards, it would be unduly burdensome to the judicial system.

108.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Straight Time Workers and provide for judicial consistency.

109.    The questions of law and fact that are common to each Straight Time Worker predominate over any questions affecting solely the individual members.

110.    Among the common questions of law and fact are:

        a.      Whether Orchards misclassified Bowers and the other Straight Time Workers as independent contractors;

b.      Whether Orchards misclassified Bowers and the other Straight Time Workers as exempt;

c.      Whether Orchards uniformly imposed its straight time for overtime pay scheme on the Straight Time Workers;

d.      Whether Bowers and the other Straight Time Workers failed to receive overtime wages for all hours worked in excess of 40 hours a workweek, while working for Orchards;

e.      Whether Orchards' decision not to pay Bowers and the other Straight Time Workers overtime wages for all overtime hours worked was made in good faith; and

f.      Whether Orchards' violations were willful.

111.    Bowers and the other Straight Time Workers sustained damages arising out of Orchards' straight time for overtime pay scheme.

112.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Orchards' records, and there is no detraction from the common nucleus of liability facts.

113.    The back wages owed to Bowers and the other Straight Time Workers can be calculated using the same formula applied to the same Orchards records.

114.    Therefore, the issue of damages does not preclude collective treatment.

115.    Orchards is liable under the FLSA for failing to pay overtime wages to Bowers and the other Straight Time Workers at the required rate for all overtime hours

worked.

116.    Consistent with Orchards' straight time for overtime pay scheme, Bowers and the other Straight Time Workers are not paid overtime wages for all overtime hours worked.

117.    As part of its regular business practices, Orchards intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Bowers and the other Straight Time Workers.

118.    There are many similarly situated Straight Time Workers who have been denied overtime wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

119.    The similarly situated Straight Time Workers are known to Orchards, are readily identifiable, and can be located through Orchards' business and personnel records.

**ORCHARDS' VIOLATIONS WERE WILLFUL**

120.    Orchards knew it controlled Bowers' and the other Straight Time Workers' rates of pay.

121.    Orchards knew it controlled Bowers' and the other Straight Time Workers' method of pay.

122.    Orchards knew it controlled Bowers' and the other Straight Time Workers' work schedules.

123.    Orchards knew it prohibited Bowers and the other Straight Time Workers

from straying from its policies, procedures, specifications, and other protocols in performing their job duties.

124. Orchards knew it did not require Bowers and the other Straight Time Workers to possess any specialized skillset other than that maintained by all workers in their respective job positions.

125. Orchards knew Bowers' and the other Straight Time Workers' work was integral to Orchards' core business operation.

126. Orchards knew it controlled the day-to-day job duties that Bowers and the other Straight Time Workers performed.

127. And Orchards knew that Bowers and the other Straight Time Workers performed these duties it controlled on Orchards' premises.

128. Orchards knew its investment in the tools and equipment necessary for Bowers and the other Straight Time Workers to perform their jobs relatively outweighed any investment made by these workers by a substantial degree.

129. Orchards knew it did not hire Bowers and the other Straight Time Workers to work on a project-by-project basis.

130. Orchards knew Bowers and the other Straight Time Workers relied on it for work and compensation.

131. Orchards knew it controlled Bowers' and the other Straight Time Workers' opportunity for profit or loss.

132. Indeed, Orchards knew Bowers' and the other Straight Time Workers'

opportunity for profit or loss was minimal and their income was limited to their hourly compensation (which did not include overtime wages).

133.    Thus, Orchards knew, should have known, or recklessly disregarded whether, as a matter of economic reality, Bowers and the other Straight Time Workers were Orchards' employees.

134.    Nonetheless, Orchards misclassified Bowers and the other Straight Time Workers as independent contractors and refused to pay them overtime wages.

135.    Orchards' misclassification of Bowers and the other Straight Time Workers as independent contractors was designed to mask its FLSA violations (while also itself being a violation).

136.    Orchards' misclassification of Bowers and the other Straight Time Workers as independent contractors was neither reasonable, nor was its decision to misclassify Bowers and the other Straight Time Workers as independent contractors made in good faith.

137.    Orchards knew it was subject to the FLSA's overtime provisions.

138.    Orchards knew the FLSA required it to pay non-exempt employees, including Bowers and the other Straight Time Workers, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

139.    Orchards knew Bowers and each Straight Time Worker worked more than 40 hours in at least one workweek during relevant period because it approved their "on the clock" hours worked.

140.    Orchards knew Bowers and the other Straight Time Workers were its hourly employees.

141.    Orchards knew Bowers and the other Straight Time Workers were paid by the hour, while working for Orchards.

142.    Orchards knew Bowers and the other Straight Time Workers were paid straight time for overtime, while working for Orchards.

143.    Orchards knew Bowers and the other Straight Time Workers were not paid on a "salary basis," while working for Orchards.

144.    Orchards knew it did not pay Bowers and the other Straight Time Workers any guaranteed sum on a weekly or less frequent basis that was not subject to reduction based on the quantity or quality of work.

145.    Thus, Orchards knew its straight time for overtime pay scheme did not satisfy the "salary basis" test.

146.    Nonetheless, Orchards uniformly misclassified Bowers and the other Straight Time Workers as exempt employees and they were not paid overtime wages.

147.    Orchards' decision to misclassify Bowers and the other Straight Time Workers was neither reasonable, nor was it made in good faith.

148.    Orchards' failure to pay Bowers and its other Straight Time Workers overtime wages was neither reasonable, nor was its decision not to pay these non-exempt employees overtime wages made in good faith.

149.    Orchards knew, should have known, or showed reckless disregard for

whether its conduct described in this Complaint violated the FLSA.

150.   Orchards knowingly, willfully, and/or in reckless disregard carried out its straight time for overtime pay scheme that deprived Bowers and the other Straight Time Workers of premium overtime wages in violation of the FLSA.

## CAUSE OF ACTION
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

151.   Orchards violated the FLSA by employing non-exempt employees (Bowers and the other Straight Time Workers) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their regular rates of pay for the hours they worked in excess of 40 a workweek.

152.   Orchards' unlawful conduct harmed the Straight Time Workers by depriving them of the overtime wages they are owed.

153.   Accordingly, Orchards owes the Straight Time Workers the difference between the rate actually paid and the required overtime rate for all hours worked in excess of 40 a workweek.

154.   Because Orchards knew or showed reckless disregard for whether its straight time for overtime pay scheme violated the FLSA, Orchards owes these wages for at least the last 3 years.

155.   Orchards is also liable to the Straight Time Workers for an additional amount equal to all their unpaid wages as liquidated damages.

156.    Finally, the Straight Time Workers are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### JURY DEMAND

157.    Bowers demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Bowers, individually and on behalf of the other Straight Time Workers, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Straight Time Workers allowing them to join this action by filing their written consent;

b.    An Order pursuant to Section 16(b) of the FLSA finding Orchards liable for unpaid back wages due to Bowers and the other Straight Time Workers, plus liquidated damages in an amount equal to their unpaid wages;

c.    A Judgment against Orchards awarding Bowers and the other Straight Time Workers all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d.    An Order awarding attorney's fees, costs, and expenses;

e.    Pre- and post-judgment interest at the highest applicable rates; and

f.    Such other and further relief as may be necessary and appropriate.

Dated: February 20, 2025

Respectfully submitted,

By: /s/ Jennifer L. McManus
Jennifer L. McManus (P65976)
Local Counsel for Plaintiff
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR BOWERS &
THE STRAIGHT TIME WORKERS**